IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**VICTOR A. WHITTAKER,**

    Plaintiff

    v.                                     CIVIL NO. JKB-09-3135

**MORGAN STATE UNIV.** *et al.*,

    Defendants

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

*I. Background*

This case has had a somewhat tortured procedural history. It was filed in November 2009 under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e) by Plaintiff Victor A. Whittaker against Morgan State University and alleged employment discrimination, based on race and national origin, and retaliation after he had filed a charge of discrimination with the Equal Employment Opportunity Commission. (JKB-09-3135, Compl., ECF No. 1.) The case proceeded in a normal fashion for the next year until Plaintiff's counsel withdrew from the case and Whittaker elected to proceed *pro se*. (ECF Nos. 17 & 21.) Whittaker's request in November 2010 to join nine additional Defendants, including seven university administrators and two students, was granted. (ECF No. 24.)

Roughly a week later, Whittaker *pro se* filed another lawsuit against the same Defendants but added one, a former university president. (JKB-10-3370, Compl., ECF No. 1.) His complaint alleged violations of "civil, statutory and constitutional rights" and was brought pursuant to 42 U.S.C. §§ 1981 and 1983 as well as Title VII and the First and Fourteenth Amendments to the federal constitution; he also asserted a state law claim premised upon breach

of contract. (*Id.* ¶¶ 1 & 28.) This second case has never proceeded in the normal fashion. Summonses were returned to the Court showing service on Morgan State on December 22, 2010, and the other ten Defendants on December 16, 2010. (JKB-10-3370, ECF Nos. 7 & 8.) Thus, Morgan State's deadline to file an answer was January 12, 2011, and the deadline for the other ten Defendants to do the same was January 6, 2011. Fed. R. Civ. P. 12(a)(1)(A)(i). When nothing had been filed by the appointed deadlines, Whittaker filed a motion for default judgment. (*Id.* ECF No. 10.) Morgan State, without leave of Court, filed on January 28 a motion to dismiss for insufficient service of process on behalf of other, unrepresented Defendants. (*Id.* ECF No. 12.) It also filed on February 17 a motion for partial dismissal based upon Eleventh Amendment immunity. (*Id.* ECF No. 16.) The Court denied the motion premised upon insufficient service of process but granted the second motion and dismissed Morgan State and the "official capacity" Defendants from all counts except the Title VII count; however, the "individual capacity" Defendants remained in all counts. (*Id.* ECF Nos. 22 & 23.) The Court further held Whittaker's motion for default judgment in abeyance and ordered all Defendants to file appropriate responsive pleadings on or before April 4, 2011. (*Id.* ECF No. 23.)

Instead of filing appropriate responsive pleadings, however, the individual capacity university administrators filed on April 4 a response in opposition to Whittaker's motion for default judgment, sought to reargue points on which the Court had already ruled, and misconstrued various points of the Court's prior orders. (*Id.* ECF No. 24.) Morgan State and the current university president (who was only sued in his official capacity) filed nothing.[1] Although Defendants' conduct in this litigation sorely tested the Court's patience, the Court extended one more opportunity for them to file their responsive pleadings on or before May 2, 2011. (*Id.* ECF

---

[1] Two students also were sued and are included within the ten defendants mentioned earlier in this narrative. They were later dismissed from the case at Whittaker's request. (JKB-10-3370, ECF No. 32.)

No. 31.) On April 6, Whittaker secured counsel to represent him. (*Id.* ECF Nos. 25 & 29.) Finally, on the appointed date, Defendants, all of whom, it should be noted, were represented by the same state assistant attorney general, filed their answers. (*Id.* ECF Nos. 33-40.) The next day, the Court denied Whittaker's motion for default judgment and granted the consent motion to consolidate the two cases. (*Id.* ECF No. 41.)

In an effort to get the proceedings back on track, the Court held a conference call with both counsel and issued a revised scheduling order. (JKB-09-3135, ECF No. 31.) Various extensions of time were granted to facilitate discovery and filing of motions for amendment of pleadings. (*Id.* ECF Nos. 34, 37, 39.) Although Whittaker's request to extend the time to amend the complaint was premised upon the revised scheduling order's deadline for *motion for amendment* of pleadings, the motion to extend time was worded in such a way that it could also be construed *as* a motion for amendment rather than simply a motion to extend the time in which to file a motion for leave to amend pleadings. (*Id.* ECF No. 38.) In any event, the Court granted the motion, and on June 27, Whittaker, through counsel, filed an amended complaint (*id.* ECF No. 40), which, in the Court's view, is a good bit easier to digest than Whittaker's original *pro se* effort. Under the Federal Rules of Civil Procedure, Defendants had a deadline of July 14 to file appropriate responsive pleadings to the amended complaint. Fed. R. Civ. P. 15(a)(3).[2] By July 26, the Court, having noted that nothing had been filed in response to the amended complaint, issued a letter order that ordered, on or before August 4, counsel for Defendants to explain their intentions in not filing an answer. (JKB-09-3135, ECF No. 41.) On August 4, Defendants filed a motion to dismiss the amended complaint for failure to state a claim for relief (*id.* ECF No. 42), but offered no explanation for its untimely filing and did not request the

---

[2] The rule allows fourteen days after service. Added to that are three days under the "mailbox rule." *See* Fed. R. Civ. P. 6(d).

3

Court's permission to late-file this motion. Its untimeliness did not, however, escape the notice of Plaintiff's counsel, who has opposed the motion on that basis as well as on the merits. (*Id.* ECF No. 45.) In their reply, Defendants still do not explain why their motion was late. (*Id.* ECF No. 46.) Instead, they say, "The Amended Complaint was unnecessary, it did not clarify anything, and Defendants had already filed their answers. Thus, it is disingenuous under these circumstances to argue that a default should be entered against the defendants." (*Id.* 3.)

Although not cited by Defendants, some case law exists for the proposition that an answer to the original complaint may also suffice as an answer to an amended complaint. *See, e.g., LaGorga v. Kroger Co.*, 407 F.2d 671, 673 (3d Cir. 1969). That proposition appears to be limited to instances in which a defendant seeks to rely upon an affirmative defense asserted in its answer to the complaint but not in an answer to an amended complaint, *see Stanley Works v. Snydergeneral Corp.*, 781 F. Supp. 659, 664-65 (E.D. Cal. 1990), or in which the averments of the amended complaint are substantially similar to averments in the original complaint and, therefore, a denial in the answer to the original complaint suffices as a denial to a substantially similar averment in the amended complaint, *see LaGorga*, 407 F.2d at 673; *Rago v. City of Pittsburgh*, 2010 WL 2991202, at *6 (W.D. Pa. Jul. 29, 2010), *aff'd*, 2011 WL 2144435 (3d Cir. Jun. 1, 2011); *In re Izaguirre*, 166 B.R. 484, 489-90 (Bankr. N.D. Ga. 1994). Consequently, if Defendants' intention was to rely upon their prior answers to the original complaints in these consolidated cases, they could have informed the Court of that in response to its letter order of July 26. However, a limitation on the proposition discussed here is that a defendant's answer to the original complaint is of no effect insofar as the amended complaint adds new, substantive, factual allegations or new legal theories. *See Izaguirre*, 166 B.R. at 490 ("Fed. R. Civ. P. 15(a) requires a response only to the altered or added allegations in an amended pleading; if a party has already responded to a portion of a pleading, the prior response is deemed to be a response to

that portion contained in a new pleading."). As a result, ordering a default judgment, as requested by Plaintiff, is not the proper course of action under these circumstances. Even so, at the appropriate juncture, the Court may be called upon to compare the amended complaint with the original complaints and to determine if Defendants' prior answers fully respond to the allegations and causes of action advanced in the amended complaint.

This is so because the motion to dismiss filed by Defendants was untimely. Since it was untimely, it did not have the effect of tolling the time in which to file an answer to the amended complaint. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses [enumerated (1) through (7) under Rule 12(b)] must be made before pleading if a responsive pleading is allowed."); Fed. R. Civ. P. 15(a)(3) ("Unless the court orders otherwise any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."); Fed. R. Civ. P. 12(a)(4) ("Unless the court sets a different time, serving a motion under this rule alters these periods as follows: (A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; . . . ."). The result is not that Defendants cannot assert a Rule 12(b)(6) defense for failure to state a claim for relief, which they can as will be explained shortly; instead, the result is that the time for pleading has closed, and Defendants may not file any further answer to the amended complaint. Although a Rule 12(b)(6) defense was not the subject of a properly filed, pre-pleading motion to dismiss,[3] the defense may still be asserted, under the circumstances of this case, by either a motion brought under Rule 12(c) or at trial. *See* Fed. R. Civ. P. 12(h)(2)(B), (C). Therefore, the Court will treat the motion as one for judgment on the pleadings pursuant to Rule 12(c).

---

[3] Defendants all asserted failure to state a claim for relief in their answers to the original complaints in both cases before consolidation. (JKB-09-3135, ECF No. 9; JKB-10-3370, ECF Nos. 33-40.) This is permissible under Rule 12(h)(2)(A).

The amended complaint contains six counts:

I. 42 U.S.C. § 1983 – Violation of procedural due process under the Fourteenth Amendment;
II. 42 U.S.C. § 1983 – Violation of equal protection under the Fourteenth Amendment;
III. 42 U.S.C. § 1983 – Violation of freedom of speech under the First Amendment;
IV. Title VII – Discrimination in terms and conditions of employment on bases of race and national origin;
V. Title VII – Retaliation; and
VI. 42 U.S.C. § 1985(3) – Conspiracy to deny equal protection under the Fourteenth Amendment.

(JKB-09-3135, Am. Compl., ECF No. 40.)

Defendants have offered three grounds for their motion. First, the individual capacity Defendants seek to dismiss Counts I through III and Count VI for failure to state a claim or, alternatively, based on qualified immunity. (ECF No. 42, ¶ 1.) Second, the individual capacity Defendants seek to dismiss Count IV and Count V for failure to state a claim. (*Id.* ¶ 2.) Third, the official capacity Defendants and Morgan State ask the Court to dismiss Count VI on Eleventh Amendment grounds. (*Id.* ¶ 3.) Each contention will be addressed in turn.

## II. *Standard of Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 1950. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555.

## III. Analysis

### A. *Count I – Procedural Due Process*

The first inquiry in evaluating this claim focuses on whether a liberty or property interest exists and, if so, whether Plaintiff has been deprived of that interest. If the first inquiry is answered in the affirmative, then the Court must determine whether the procedures followed by the State were constitutionally sufficient. *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011). At a minimum, procedural due process requires fair notice and an opportunity to be heard "'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Beyond that, what is constitutionally required for procedural due process is flexible according to the demands of the particular situation. *Id.* at 334 (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

Guidance in the governmental employment context was provided by the Supreme Court in *Arnett v. Kennedy*, 416 U.S. 134 (1974). In that case, the Court upheld the procedures under which a federal employee could be dismissed for cause. Those procedures included notice of the intended action, a copy of the charge, reasonable time for the employee to file a written response, and an opportunity for an oral appearance. *Id.* at 142-46. In upholding those procedures, the Court was not prescribing an identical procedure for the States to follow, but only affirming their validity against a claim of deprivation of procedural due process. Additional guidance is found in the Supreme Court's opinion in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), in which the Court analyzed the process for termination of a public employee for cause and reaffirmed the basic elements of procedural due process as notice and an opportunity to respond. *Id.* at 546. More specifically, the Court stated, "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.*

7

It was clear in these two opinions that the employees who had been terminated for cause had a property interest in their continued employment. *Arnett*, 416 U.S. at 155; *Loudermill*, 470 U.S. at 538-39. In both cases, the property interest was conferred by statute. In the instant case, Whittaker claims a property interest in continued employment emanating from his contract with Morgan State as set forth in the university's faculty handbook, a copy of which is incorporated into and attached to his complaint. (Am. Compl. ¶¶ 16, 63-64; Ex. 1 ¶¶ 2.2—2.3; App'x A-39, ¶ 7.) It is reasonable to infer from the amended complaint and the faculty contract that Whittaker could only have been terminated for cause, and Defendants have not disputed that. The statutory protection for continued employment was sufficient in *Arnett* and *Loudermill* for finding a property interest, and the similar protection originating in Whittaker's contract with the university is enough to confer a property interest upon Whittaker. His termination from employment, of course, clearly constitutes a deprivation of his property interest. Thus, it must be determined whether the allegations in the amended complaint establish a lack of procedural due process in conjunction with the deprivation of his property interest.

Whittaker alleges that in October 2008, he was presented with a letter of suspension/termination, setting forth forty-nine charges, all of which were unfamiliar to him. (Am. Compl. ¶¶ 52-53.) Believing this to be in retaliation for his then-pending EEOC complaint, Whittaker supplemented his complaint in that proceeding with a claim of retaliation. (*Id.* ¶ 55.) While the EEOC claims were pending, Defendants held a faculty board of review hearing and made the decision to terminate Whittaker. (*Id.* ¶ 56.) Whittaker's complaint is silent as to whether he was provided with an explanation of Defendants' evidence against him and whether he was given an opportunity to respond to it. But he faults the process because he alleges that, contrary to established disciplinary procedures for a tenured professor, the faculty board of review consisted of persons who had made charges against him, "making them both accuser and

judge." (*Id.* ¶¶ 57-59.) That a decision-maker must be neutral seems to be an accepted part of the jurisprudence concerning procedural due process:

> [D]ue process requires a "neutral and detached judge in the first instance," *Ward v. Village of Monroeville,* 409 U.S. 57, 61–62, 93 S. Ct. 80, 84, 34 L.Ed.2d 267 (1972) . . . . "That officers acting in a judicial or quasi-judicial capacity are disqualified by their interest in the controversy to be decided is, of course, the general rule." *Tumey v. Ohio,* 273 U.S. 510, 522, 47 S. Ct. 437, 441, 71 L. Ed. 749 (1927). Before one may be deprived of a protected interest, whether in a criminal or civil setting, see *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 242, and n.2, 100 S. Ct. 1610, 1613, and n.2, 64 L. Ed. 2d 182 (1980), one is entitled as a matter of due process of law to an adjudicator who is not in a situation "'which would offer a possible temptation to the average man as a judge . . . which might lead him not to hold the balance nice, clear and true . . . .'" *Ward, supra,* 409 U.S. at 60, 93 S. Ct. at 81 (quoting *Tumey, supra,* 273 U.S., at 532, 47 S. Ct., at 444). Even appeal and a trial *de novo* will not cure a failure to provide a neutral and detached adjudicator. 409 U.S., at 61, 93 S. Ct. at 83.

> "[J]ustice," indeed, "must satisfy the appearance of justice, and this stringent rule may sometimes bar trial [even] by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." *Marshall v. Jerrico, Inc., supra,* 446 U.S., at 243, 100 S. Ct., at 1613 (citations and internal quotation marks omitted). This, too, is no less true where a private party is given statutory authority to adjudicate a dispute . . . .

> . . . Not all determinations affecting liability are adjudicative, and the "'rigid requirements'. . . designed for officials performing judicial or quasi-judicial functions, are not applicable to those acting in a prosecutorial or plaintiff-like capacity." 446 U.S., at 248, 100 S. Ct., at 1616. Where an initial determination is made by a party acting in an enforcement capacity, due process may be satisfied by providing for a neutral adjudicator to "conduct a *de novo* review of all factual and legal issues." Cf. *id.,* at 245, 100 S. Ct., at 1614; see also *id.,* at 247–248, and n.9, 100 S. Ct., at 1615 and n.9; cf. *Withrow v. Larkin,* 421 U.S. 35, 58, 95 S. Ct. 1456, 1470, 43 L.Ed.2d 712 (1975) ("Clearly, if the initial view of the facts based on the evidence derived from nonadversarial processes as a practical or legal matter foreclosed fair and effective consideration at a subsequent adversary hearing leading to ultimate decision, a substantial due process question would be raised").

*Concrete Pipe and Products of California, Inc. v. Construction Laborers*, 508 U.S. 602, 617-18 (1993).

Under this standard, Whittaker's claim of denial of procedural due process in Count I is adequate to state a claim for relief. Defendants attempt to counter that conclusion by arguing

9

that the specific allegation made about Defendant Maurice C. Taylor serving as the hearing officer is not true. (Defs.' Reply 4, ECF No. 46.) They have attached a letter signed by three other people who comprised the "faculty review committee" who met in February 2009. (*Id.* Ex. A.) Whatever the merit is of the factual argument Defendants seek to make in this regard, it is not a question properly before the Court. Defendants are seeking dismissal of Count I for failure to state a claim; they are not seeking summary judgment. Their motion can only be decided by reference to the amended complaint and any document incorporated by it. Given that limitation, the Court affirms its conclusion that Count I states a cognizable claim for relief.

### B. *Qualified Immunity*

The individual Defendants have also sought to dismiss Count I, as well as Counts II, III, and VI, on the ground of qualified immunity. (Defs.' Mot. 1.) But they are not entitled to this affirmative defense because they did not plead it. "Qualified . . . immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Although Defendants pleaded sovereign immunity (JKB-09-3135, ECF No. 9; JKB-10-3370, ECF Nos. 33-40), they did not plead the affirmative defense of qualified immunity. While both defenses offer protection from suit, they are not the same, as is evident from their different treatment in judicial opinions. *See, e.g.*, *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-45 (1993); *Sales v. Grant*, 224 F.3d 293, 295-99 (4th Cir. 2000). Even if they had pleaded it, they fail to make a coherent argument as to why the rights that Plaintiff claims they violated were not clearly established. Defendants' assertion of qualified immunity has no merit.

### C. *Count II – Equal Protection*

In the second count of the amended complaint, Whittaker claims he was denied equal protection of the law when his property interest, i.e., his continued employment, was terminated

differently from the manner of termination afforded to other faculty members who do not share his racial background and national origin. (Am. Compl. ¶¶ 68-72.) Although he states his national origin to be Jamaican (*id.* ¶ 1), he never states his racial background, and speculation by the Court would be inappropriate. The only other allegation made as to difference in treatment is the following:

> 22. Throughout the years since Whittaker has been at Morgan State University, the administration has exhibited hostility and discriminatory treatment of him, as of other faculty and staff who are foreign born.

(Am. Compl.) Count II fails to state a claim for relief because the complaint does not contain sufficient factual allegations to permit the Court to conclude that Whittaker was treated differently from other faculty members regarding termination from employment. This count will be dismissed.

### D. Count III – 42 U.S.C. § 1983: First Amendment

In this count, Whittaker alleges he, as a tenured faculty member, had a First Amendment right to express his views regarding the governance of the university and of the economics department because they affected the well-being of university students and the continued sound operation of the university and were, therefore, matters of public concern. (Am. Compl. ¶¶ 75-78.) Further, he alleges Defendants retaliated against him for expressing his views by terminating him based on false charges. (*Id.* ¶¶ 79-80.) Elsewhere in the amended complaint, Whittaker alleges he supported Morgan State being governed as part of the state university system rather than being independent, and his view was opposed to that of Defendant Richardson. (*Id.* ¶ 24.) He alleges this prior opposition in 1989 was used against him in 2008 at his termination hearing. (*Id.* ¶ 27.) Additionally, Whittaker alleges he opposed the creation of a common departmental final examination for Economics 212 because such an examination would be inconsistent with policies set forth in the university's catalog and faculty handbook. (*Id.*

¶¶ 33-35.) His protest of the common examination was met with threats of censure and charges of insubordination and resulted in interference with Whittaker's grading of the examination by Defendants' concoction of a scheme to allege cheating by Whittaker's students. (*Id.* ¶¶ 36-46.) Whittaker also alleges Defendants furthered their scheme of retaliation when they "recruited, encouraged and coerced students into fabricating false accusations against Whittaker and his teaching, and having them placed in his file to support the scheme to terminate him." (*Id.* ¶¶ 48-51.)

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). The parties agree that a valid cause of action of retaliation for First Amendment speech is premised upon three elements:

> First, the plaintiff must demonstrate that his or her speech was protected. Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech. Third, the plaintiff must demonstrate that a causal relationship exists between its speech and the defendant's retaliatory action.

*Id.* at 685-86 (citations omitted).

Defendants argue that Whittaker's speech was not protected speech because it was not a matter of public concern. (Defs.' Mot. Supp. Mem. 6-7.) They classify Whittaker's speech as "an internal matter in the Economics Department." (*Id.* 6.) Defendants' argument is not well taken.

Examples of matters of public concern in the educational arena include criticism by a public high school teacher of his local board of education regarding its allocation of school funds between athletics and education and the board's methods for informing taxpayers regarding a claimed need for more revenue, *Pickering v. Board of Education*, 391 U.S. 563, 571-72 (1968);

12

testimony by a state college teacher before committees of the state legislature as to whether the college should become a four-year college in opposition to what the college's regents desired, *Perry v. Sindermann*, 408 U.S. 593, 594-95 (1972); and a public school teacher's provision to a local radio station of the substance of a school principal's memorandum regarding teacher dress and appearance, *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 282-84 (1977). The subjects of Whittaker's speech—the issue as to whether Morgan State should be governed by the state university system and the issue of whether the economics department should administer a common examination in a particular course—are no less matters of public concern than found to have existed in the preceding Supreme Court cases. Defendants do not take issue with the second and third required elements of this cause of action, and the Court concludes Whittaker has adequately stated a claim for relief on Count III.

### *E. Count IV – Title VII: Discrimination in Terms and Conditions of Employment*

This count suffers from the same deficiency as did Count II claiming a denial of equal protection. Whittaker has failed to allege sufficient facts to permit the Court to infer that he was treated differently from other faculty members based on either his race or national origin. It is not enough for him to say he was treated differently; he must include enough factual detail that supports the Court's independent inference to that effect. This count will be dismissed.

### *F. Count V – Title VII: Retaliation*

Defendants have correctly pointed out that a Title VII claim is properly brought only against a plaintiff's employer. *See Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998) ("[S]upervisors are not liable in their individual capacities for Title VII violations . . . We interpret the inclusion of agent in Title VII's definition of employer simply to establish a limit on an employer's liability for its employees' actions."). Whittaker alleges that he was

employed by Morgan State. (Am. Compl. ¶ 1.) He has not alleged that any of the other Defendants were his employer. Accordingly, all Defendants other than Morgan State will be dismissed from Count V.

### G. Count VI – 42 U.S.C. § 1985(3): Conspiracy

In the last count, Whittaker claims that Defendants acted under color of state law and conspired to terminate his employment without using proper procedures and while treating Whittaker differently from other faculty members on the basis of race and national origin. (Am. Compl. ¶¶ 93-97.) It was noted in the Court's earlier discussion regarding Whittaker's claim of denial of procedural due process that he stated sufficient facts to go forward on that claim. But a conspiracy to deny procedural due process, without more, is not enough to state a claim under 42 U.S.C. § 1985(3). The *raison d'être* for section 1985(3) was to protect citizens from conspiracies to deny equal protection of the law or equal privileges and immunities under the law when those conspiracies are based on a "racial, or perhaps otherwise class-based, invidiously discriminatory animus." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). *See also A Society without a Name v. Virginia*, No. 10-1437, 2011 WL 3690000, at *3 (4th Cir. Aug. 24, 2011) (one element of section 1985(3) claim is specific class-based, invidiously discriminatory animus). Whittaker's allegations are not sufficient to sustain a claim that Defendants conspired against him for the purpose of discriminating against him on the basis of race and national origin for the same reason that his substantive claims in that regard failed. This count will be dismissed.[4]

---

[4] If this count were not being dismissed under Rule 12(b)(6), it would still be dismissed against Morgan State and the official capacity Defendants because of Eleventh Amendment immunity.

*IV. Conclusion*

The defense of qualified immunity is not available to the individual Defendants. Count I, denial of procedural due process, remains in the case as to all individual Defendants. Count II, denial of equal protection, will be dismissed for failure to state a claim. Count III, retaliation against free speech, is retained against all individual Defendants. Count IV, Title VII discrimination, will be dismissed for failure to state a claim. Count V, Title VII retaliation, is retained only against Defendant Morgan State University; the count will be dismissed against all other Defendants. Count VI, conspiracy to deny equal protection, will be dismissed for failure to state a claim. Because Defendant Wilson has been sued only in his official capacity, he will be dismissed from the case. A separate order will be entered reflecting these rulings.

DATED this 12th day of September, 2011.

BY THE COURT:

/s/
James K. Bredar
United States District Judge