IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| **VICTOR A. WHITTAKER,** | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-09-3135 |
| **MORGAN STATE UNIVERSITY** *et al.*, | * | |
| Defendants | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

*I. Background*

Pending before the Court is Defendants' motion for summary judgment (ECF No. 84) in this consolidated case. Previously, the Court dismissed Count II (equal protection), Count IV (Title VII employment discrimination), and Count VI (conspiracy to deny equal protection) for failure to state a claim for relief. (Order, Sept. 12, 2011, ECF No. 49.) Further, the Court dismissed all defendants except Morgan State University from Count V (Title VII retaliation) and dismissed Defendant Dr. David Wilson from the case. (*Id.*) In the companion case before consolidation (JKB-10-3370), Defendants Adrienne McClung and Giovanni Lawrence were voluntarily dismissed by Plaintiff Victor A. Whittaker. (JKB-10-3370, Order, Apr. 26, 2011, ECF No. 32.) McClung and Lawrence were omitted by Whittaker from his amended complaint filed on June 27, 2011 (JKB-09-3135, ECF No. 40); the Clerk will be directed to note their termination from the case effective June 27, 2011. The Court has considered Defendants' motion, Whittaker's response in opposition (ECF No. 87), and Defendants' reply (ECF No. 93). No hearing is necessary. Local Rule 105.6 (D. Md. 2011). The motion will be granted.

Also pending before the Court is Defendants' motion to strike an unauthenticated letter attached to Whittaker's response and a portion of Whittaker's affidavit in support of his response. (ECF No. 90). This issue has been briefed (ECF Nos. 94, 95), and no hearing is required. It will be granted.

## II. *Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

*III. Undisputed Facts*

The following facts are distilled from the allegations of the amended complaint, Defendants' motion for summary judgment, and Plaintiff's response in opposition to Defendants' motion, unless specifically cited as evidence that is nevertheless uncontradicted in the record and, therefore, regarded as undisputed. Dr. Victor A. Whittaker was a tenured professor of economics at Morgan State University ("MSU"). At a faculty meeting in 1989, Whittaker vocally opposed MSU's then-independent governance.[1] Because MSU's president, Dr. Earl Richardson, took issue with the manner in which Whittaker had expressed himself, Richardson called Whittaker to his office afterward and told Whittaker he should have mutual respect for his colleagues and afford them the same opportunity to ask questions as Whittaker had. (Pl.'s Opp'n, Ex. 1, Richardson Dep. 63:14—69:20, Mar. 15, 2012, ECF No. 87.) In 1994, Whittaker was assigned an 8:00 a.m. class to teach, and his request to change the class to 9:00 a.m., to enable him to fulfill his childcare responsibilities, was denied. The same year, Whittaker recorded the grade of "F" for a student who missed his final examination because of a family emergency. Dr. Burney Hollis directed the entry of an "incomplete" grade for the student in accordance with school policy and further directed Whittaker to administer the examination to the student and to calculate his grade to include the score on the examination. Summer classes in the economics department were eliminated in 1994 and reinstated in 2000. In the Fall of 2007, several students filed with MSU's EEO officer, Jodi Cavanaugh, complaints of racial discrimination by Whittaker. (*Id.* Ex. 4, Cavanaugh Dep. 32:14—33:12; 109:4-15, Mar. 16, 2012.) Cavanaugh conducted an investigation and wrote a report summarizing her findings and recommending "that Whittaker be disciplined in a strong manner up to and including

---

[1] MSU ceased being independently governed when it was brought into the University System of Maryland.

termination." (*Id.* 40:4-13; 120:2-14; Ex. 2, Hearing Report, University exhibit #2.) Her undated report went to the office of the president. (*Id.* Ex. 4, Cavanaugh Dep. 63:18-22.)

In the Spring of 2008, the economics department instituted a common final examination for an economics class taught by Whittaker and others; Whittaker vocally opposed the common exam. The coordinator of the common exam, Dr. Randal Reed, noticed what he believed to be a pattern of irregularity in the examinations of thirteen students in Whittaker's class. (*Id.* Ex. 3, Reed Dep. 48:13-15, Mar. 14, 2012.) Hollis directed Whittaker to award "incomplete" grades to those thirteen students pending further investigation, which Whittaker opposed. On May 21, 2008, he sent a letter to Richardson, complaining about the actions of Reed and referring to him as "this white man" or "that white man." Whittaker copied several people on his letter, including Hollis. Hollis responded to that letter on June 9, 2008, labeled Whittaker's use of inflammatory and abusive language and racial epithets as insubordinate, and indicated he was referring the matter to Cavanaugh to assess potential violations of MSU's policy against racial discrimination. Cavanaugh did so, and in her report dated September 29, 2008, she made the same recommendation of disciplinary action as in her report following the student complaints. (*Id.* Ex. 2, Hearing Report, University exhibit #3.)

On June 21, 2008, Whittaker filed a charge of discrimination with the Equal Employment Opportunity Commission. He claimed that Hollis's letter of June 9, 2008, was a "disciplinary letter for insubordination" based on Whittaker's "style and manner of speech." He claimed the letter constituted discrimination against him because of his race (black), national origin (Jamaican), and age (76). On July 2, 2008, the EEOC sent a notice of charge of discrimination to MSU.

On October 13, 2008, Richardson sent a letter to Whittaker, notifying Whittaker that, based on the recommendation of the vice president for academic affairs, Richardson was commencing the process of termination of Whittaker's faculty appointment.  Attached to Richardson's letter was a list of 49 charges of alleged misconduct beginning in the Fall Semester of 2007 and continuing into the Fall Semester of 2008.  These charges included allegations of willful misconduct, professional misconduct, discrimination, and incompetency.  Whittaker was suspended with pay the same date.  He was notified of his right to request a hearing.  On October 23, 2008, Whittaker filed an additional charge with the EEOC, claiming he was terminated on October 13, 2008, in retaliation for his earlier EEOC charge.

After Whittaker requested a hearing, one was held on November 20 and 21, 2008, and was presided over by the hearing officer, Dr. Maurice Taylor.  Witnesses testified and exhibits were introduced.  Both MSU and Whittaker were represented by their respective counsel.  Whittaker was permitted to cross-examine witnesses and introduce evidence.  After the hearing, Taylor compiled a report to the president, summarizing the testimony of the witnesses and the documentary exhibits.  Taylor determined that, out of the original 49 charges, 28 had been sustained by the evidence.  His January 20, 2009, report concluded with a recommendation that Whittaker's faculty appointments be terminated.  Taylor was not aware of Whittaker's EEOC charges until he was deposed in March 2012.  (Pl.'s Opp'n, Ex. 6, Taylor Dep. 64:3-15, Mar. 13, 2012.0

On January 23, 2009, Richardson sent Whittaker a letter, providing him with Taylor's findings and recommendation and giving him fifteen days to request review and/or oral argument before a faculty review committee.  Whittaker's counsel requested review.  The faculty review committee met on February 19, 2009, and the same day, notified Richardson it had reviewed the

information and documentation and confirmed that all procedures relating to MSU's termination policy had been followed and no material or prejudicial error had occurred. Richardson wrote Whittaker on the following day and notified him of Richardson's decision to terminate Whittaker that day.

## IV. Analysis

### A. Motion to Strike

Defendants have moved to strike from Plaintiff's materials in opposition to Defendants' motion for summary judgment an unauthenticated letter from a former MSU student, Brandon Smith, as well as portions of Whittaker's affidavit, which incorporates statements of Brandon Smith. The parts of Whittaker's affidavit incorporating Smith's statements clearly do not satisfy the requirement of Federal Rule of Civil Procedure 56(c)(4), which provides:

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Anything told to Whittaker by Smith does not meet the definition of "personal knowledge" in Rule 56(c)(4). Accordingly, numbered paragraphs 15, 16, and 17 are stricken from Whittaker's affidavit. Similarly, Whittaker's attempt to authenticate Smith's letter to Whittaker and attach it as an exhibit to Whittaker's affidavit is unsuccessful. Although Whittaker could certainly testify that he received a letter from Smith, he cannot authenticate its contents because Whittaker is not the author of the letter. *See Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) ("[A] letter 'must be attached to an affidavit and authenticated by its author in the affidavit or a deposition'" (citing 10A Charles A. Wright, *Federal Practice and Procedure* § 2722, at 58-60 (1983 & 1993 Supp.))). Consequently, Smith's letter is stricken.

## B. *Claim of Denial of Procedural Due Process*

Whittaker has claimed in Count I of his amended complaint that he was denied procedural due process when Defendants did not keep separate the adversarial, judicial, and witness functions of his termination proceeding, when they conducted his termination proceeding without a neutral and unbiased tribunal, and when the tribunal's decision rested on evidence Defendants knew to be false. (Am. Compl. ¶ 66, ECF No. 40.) Defendants seek summary judgment on this count because, first, they argue Whittaker did not exhaust his internal administrative remedies and, second, they contend they provided Whittaker with all the process he was due. Defendants' first argument has no merit because Whittaker was not required to exhaust administrative remedies before filing this claim under section 1983, Title 42, United States Code. Defendants mistakenly cite cases dealing either with judicial review of administrative decisions or cases decided under the Prison Litigation Reform Act's exhaustion provision, 42 U.S.C. § 1997e(a). *See generally Woodford v. Ngo*, 548 U.S. 81, 87-91 (2006). Whittaker's case does not fall within either category, and his § 1983 claim need not be exhausted. *Patsy v. Bd. of Regents, State of Fla.*, 457 U.S. 496, 516 (1982).

On the merits, Defendants do not dispute that Whittaker, as a public university tenured professor, had a property interest in continued employment with MSU. Thus, before he could be deprived of that interest, Whittaker was "entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). At this stage of the proceedings, Whittaker does not argue that he did not receive notice of the charges against him. Indeed, he cannot make a plausible argument to that effect since the October 13, 2008, letter from Richardson to him—with the 49 charges—was the subject of Whittaker's supplemental

7

EEOC charge of retaliation. Whittaker also does not argue that he did not receive an explanation of MSU's evidence against him since it was the subject of the November 20-21, 2008, hearing, in which Whittaker participated, and was included with Richardson's January 23, 2009, letter to Whittaker informing him of Taylor's termination recommendation. Whittaker and his counsel had the opportunity at the hearing to cross-examine witnesses and to present evidence. Further, Whittaker's counsel forewent the opportunity to present oral argument to the faculty board of review, who was charged with reviewing the hearing record and report and determining whether proper procedures were fairly followed. Under *Loudermill*, the undisputed evidence shows Whittaker received due process.

Whittaker, however, makes two additional arguments on this issue. First, he argues Taylor, the hearing officer, was biased because he was a participant in events that were the subject of the hearing. Second, he claims evidence was fabricated and relies solely upon the now-stricken, unauthenticated letter from Brandon Smith for this argument. Clearly, as to the latter point, Whittaker has failed to create a genuine dispute of material fact. As to the first argument, Whittaker fails to provide evidence of bias. He constructs his argument based upon innuendo, not reasonable inference.

Whittaker claims that Taylor participated in a punitive event against him in 1994, although it is unclear what action Taylor was supposed to have taken. Whittaker asserts that Taylor made a vituperative attack on Whittaker in a memorandum about Whittaker's being late to classes. (Pl.'s Opp'n 6.) However, turning to the hearing exhibit relied upon by Whittaker to support his argument, the Court finds only a memorandum from Dr. Tekie Fessehatzion, Chairperson of the Economics Department, to Whittaker regarding Whittaker's tardiness to class, personally observed by Fessehatzion; Taylor, then Assistant Dean of the College of Arts and

Sciences, was only copied on the memorandum. (*Id.* Ex. 2, Hearing Report, University exhibit #8). When questioned at his deposition, Taylor did not recall the memorandum and said he had no role in putting it together. (*Id.* Ex. 6, Taylor Dep. 44:7-21, Mar. 13, 2012.) He also said he did not recall a meeting memorialized in another memorandum that was written by Hollis to Whittaker on June 28, 1994, in which Hollis informed Whittaker of the deduction of two days' pay for failure to meet his contractual obligations, based upon his tardiness to class and early dismissal of classes. (*Id.* 48:4—50:14 (referring to Hearing Report, University exhibit #10).) When asked whether the events of 1994 affected his participation as the presiding officer at the termination hearing, Taylor said they did not; his earliest recollection of Whittaker personally was in 2001 when Taylor served as dean of the graduate school. (*Id.* 53:19—54:7.) Whittaker has provided no evidence from which a fact-finder could infer any bias by Taylor as the hearing officer. Consequently, summary judgment will be granted to Defendants on Count I.

    C. *Claim of Retaliation for Exercise of Freedom of Speech*

In Count III, also brought pursuant to § 1983, Whittaker alleged his vocal opposition to MSU's independent governance in 1989 and to the common exam in the economics department in the Spring of 2008 resulted in Defendants' retaliation against him in the form of his termination. (Am. Compl. ¶¶ 76-80.) The evidence before the Court shows that the student complaints in the Fall of 2007 and Whittaker's derogatory letter in May 2008 to Richardson about Reed precipitated the university's investigations into his conduct and resulted in Cavanaugh's recommendation for strong disciplinary action, up to and including termination, against Whittaker. No evidence before the Court provides any causal nexus between Whittaker's exercise of his right to free speech and his termination. Summary judgment will be granted for Defendants on Count III.

### D. Claim of Retaliation under Title VII

In Count V, Whittaker alleged that the October 13, 2008, letter and notice of charges and his termination[2] were motivated in whole or in part by Whittaker's filing of his EEOC charge on June 21, 2008, and its subsequent amendment on October 23, 2008. (Am. Compl. ¶¶ 87-91.) Defendants contend the evidence shows no retaliation occurred.

To establish his claim of retaliation, Whittaker is required to provide evidence showing he engaged in protected activity, MSU took adverse employment action against him, and a causal connection existed between the protected activity and the adverse action. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989). If a plaintiff establishes a *prima facie* case, then the burden shifts to the employer to produce evidence of a legitimate, nonretaliatory reason for its decision. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000) (discussing elements of discrimination claim); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000) (applying burden-shifting scheme of analysis of discrimination claims to analysis of claims of retaliation under Title VII). If the employer satisfies this burden of production, the burden then shifts back to the plaintiff to show "'by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [retaliation].'" *See Reeves*, 530 U.S. at 143 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *Smith*, 202 F.3d at 248. It is ultimately the burden of the plaintiff to persuade the court that he has been the victim of retaliation. *See Burdine*, 450 U.S. at 256 (burden of proof in discrimination case); *Smith*, 202 F.3d at 248.

The approximately four-month period between Whittaker's filing of his original EEOC charge in June 2008 and his receipt in October 2008 of the notice of disciplinary charges against

---

[2] Alleged in the amended complaint to be in November 2008; termination did not occur until February 20, 2009.

him is presumed to establish a *prima facie* case of causality. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (noting four-month period in *Williams* between protected activity and adverse employment action was found to constitute a causal nexus). The burden thus shifts to Defendants to set forth a nonretaliatory reason for Whittaker's termination. This they have done by their assertion that Whittaker was terminated for violation of various university policies, including policies against discrimination by faculty members. Consequently, the burden shifts back to Whittaker to persuade the Court that Defendants' proffered reason was only a pretext for retaliation. Whittaker has chosen to rest his case of pretext upon the inadmissible letter of Brandon Smith, previously stricken from the case. He presents no other evidence to support his claim. Accordingly, Defendants will be granted summary judgment on Count V.

## *V. Conclusion*

The Court concludes no genuine dispute of material fact exists in the case and Defendants are entitled to judgment as a matter of law. A separate order will issue.

DATED this 21st day of September, 2012.

BY THE COURT:

/s/
James K. Bredar
United States District Judge